Romaine ADAMS, as Personal Representative to the Estate of Leonard Wilson, Plaintiff,

v.

GRACE HOSPITAL, Defendant.

No. 96–CV–73980–DT.

United States District Court,
E.D.Michigan,
Southern Division.

April 22, 1997.

John T. Alexander, Southfield, MI, for plaintiff.

William A. Tanoury, Detroit, MI, for defendant.

## OPINION

DUGGAN, District Judge.

This matter is before the Court on defendant Harper Hospital's ("defendant" or the "hospital") motion for summary judgement. Plaintiff Romaine Adams is the personal representative of the estate of Leonard Wilson. On July 23, 1996, plaintiff filed a complaint in the Circuit Court for Wayne County, Michigan, alleging that defendant violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, by failing to provide an appropriate screening of Wilson's condition on April 7, 1995. Defendant subsequently removed the action to this Court. The Court held a hearing on defendant's motion for summary judgment on April 17, 1997. For the reasons set forth at the hearing and in this Opinion, the Court must grant defendant's motion.

### Background

On April 7, 1995, Wilson arrived at defendant's emergency room, complaining of abdominal pain. Wilson did not have insurance at the time. Dr. David Komasara, a doctor on duty at the emergency room, examined Wilson. (Emergency Department Record, Pl.'s Ex. A.) Dr. Komasara determined that Wilson's condition had cleared up and discharged him. *Id.*

The hospital called plaintiff, who was living with Wilson at the time, and asked her to pick him up. Plaintiff declined to do so. Plaintiff testified that Wilson returned from the hospital in a taxi cab and was forced by his physical condition to crawl into his house. (Adams Dep. at 35–36. Def.'s Ex. A.) Adams testified that Wilson had a piece of paper pinned on his shirt stating: "If lost, send him ... home." The piece of paper had his phone number on it. (Adams Dep. at 63–64.)

Wilson returned to defendant's emergency room on April 8, 1995. Emergency room personnel diagnosed him with urosepsis. Wilson died on April 23, 1995.

### Standard of Review

Summary judgment will be granted under Rule 56(c) "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of informing the court of the basis for his or her motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must demonstrate either the absence of a genuine issue of fact or the absence of evidence supporting the nonmoving party's case. 477 U.S. at 325, 106 S.Ct. at 2554. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322, 106 S.Ct. at 2552. The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Rule 56(e),

> requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56(e)); *see Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994).

### Discussion

Plaintiff claims that defendant failed to provide Wilson with an appropriate medical screening under § 1395dd(a). Section 1395dd(a) states:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, *the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency de-* *partment,* to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

(emphasis added).

In *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266, 271–272 (6th Cir.1990) the court interpreted § 1395dd(a) as follows:

> "appropriate" can be taken to mean care similar to care that would have been provided to any other patient, or at least not known to the providers to be insufficient or below their own standards.
>
> . . . .
>
> ... We believe that the terms of the statute, specifically referring to a medical screening exam by a hospital "within its capabilities" precludes resort to a malpractice or other objective standard of care as the meaning of the term "appropriate." Instead, "appropriate" must more correctly be interpreted to refer to the motives with which the hospital acts. If it acts in the same manner as it would have for the usual paying patient, then the screening provided is "appropriate" within the meaning of the statute.

The *Cleland* court emphasized that a claim under § 1395dd(a) requires an impermissible motivation by the hospital: "A hospital that provides a substandard (by its standards) or nonexistent medical screening for any reason (including, without limitation, race, sex, politics, occupation, education, personal prejudice, drunkenness, spite, etc.) may be liable under this section." The *Cleland* court upheld the dismissal of the plaintiffs' § 1395dd(a) claim because there was "not the slightest indication that [the] outcome would have been different for a patient of any other characteristics." *Id.* at 271.

Defendant argues that there is no genuine issue of fact that defendant provided an "appropriate medical screening examination" of Wilson under § 1395dd(a). Specifically, defendant argues that plaintiff cannot show that Dr. Komasara treated Wilson differently than he would have treated any other patient. Dr. Komasara stated in his affidavit that he treated Wilson in the same manner that he would have treated any other patient

"with the same or similar medical presentation, irrespective of any differing characteristics." (Komasara Aff. ¶¶ 3–4, Def.'s Ex. F.)

Plaintiff argues that defendant violated the accepted medical practice by failing to do a urinalysis or a blood count test on Wilson. Plaintiff submits the testimony of Dr. Jack Kaufman. Dr. Kaufman testified that a review of Wilson's vital signs indicated an elevated pulse rate, an elevated respiration rate, and decreased temperature. (Kaufman Dep. at 60–61, Def.'s Ex. E.) Dr. Kaufman testified that Wilson's symptoms (elevated pulse and respiration rates, decreased temperature, and abdominal pain) would clearly indicate that he was suffering from "systemic inflammatory response syndrome." (Kaufman Dep. at 59.) Such symptoms would clearly indicate that the doctor should perform a urinalysis or a blood count test. *Id.* According to Dr. Kaufman, "These are the basic rudimentary tests which were present at the turn of the century, for heaven's sake." *Id.*

This testimony is not evidence sufficient to survive a motion for summary judgment.

[A] plaintiff must establish more than a hospital's breach of the applicable standard of care.... *Cleland* requires proof of the existence of any improper motivation such as those listed above to make out a case of inappropriate screening or improper discharge. To interpret *Cleland* in any other manner would effectively reduce the EMTALA to nothing more than a federal remedy for medical malpractice.

*Roberts v. Galen of Virginia, Inc.,* 111 F.3d 405 (6th Cir.1997) (copy attached).*

Plaintiff also argues that defendant's personnel "kicked" Wilson out of the hospital. According to plaintiff, this is shown by Adams's testimony that Wilson arrived home in a taxi cab with the note pinned to his shirt, in such a bad condition that he had to crawl to his house. While the Court agrees that this may show that the hospital discharged Wilson prematurely, the Court does not believe that it shows that Dr. Komasara was motivated by Wilson's lack of insurance (or any other factor) in failing to perform a urinalysis or a blood count. In fact, counsel for plaintiff at the hearing on April 17, 1996, did not even assert an improper motive. Instead, he argued that the Court should give to the words in the statute "appropriate medical screening" what he believes to be the "plain" meaning of those words, rather than give to those words, the specific meaning given those words by the Sixth Circuit in *Cleland* and *Roberts.* The Court declines counsel's suggestion and gives to those words the meaning that the Sixth Circuit has "given" them. Since plaintiff has not even suggested an improper motive, much less presented any evidence in support of an improper motive, defendant's motion for Summary Judgment must be granted.[1]

---

* Editor's Note: Opinion deleted for publication purposes.

1. In concluding that no genuine issue of fact exists on the issue of "improper motive", the Court takes into consideration the affidavit of Dr. Komasara submitted in support of defendant's motion and the emergency department record of April 7, 1995, which supports defendant's asserted medical reasons for the discharge. (Def.'s Ex. B.)